## A00A2086. RIVERA v. THE STATE.
(545 SE2d 105)

SMITH, Presiding Judge.

A Clayton County jury convicted Laureano Miguel Rivera of trafficking in cocaine. On appeal, he claims that the trial court erred in denying his motion to suppress and that the evidence was insufficient to support his conviction. We disagree and affirm.

Construed to support the verdict, the evidence shows that Rivera arrived in the Atlanta airport on May 4, 1998, on a flight from Puerto Rico. After disembarking, he did not follow the other passengers but began wandering aimlessly in the seating area next to the gate. Two Clayton County police officers, Rick Webster and J. J. Stubbs, had been informed that Rivera would be on the flight. The officers were dressed in plain clothes, with no weapons visible. They approached Rivera from behind, and one officer said, "[E]xcuse me, sir, I'm a police officer. Can I talk to you for a minute?" Rivera turned and responded, "Yes," in English, but when the officers asked him if he spoke English, he smiled and responded in English that he did not. Rivera told the officers, through an interpreter, that he was in Atlanta for personal reasons and that he was employed as a construction worker. Officer Webster asked to see the palms of Rivera's hands, and he saw that they were smooth and free of calluses. At this point, Rivera began to appear very nervous; his hands shook and he began to sweat.

Webster explained to Rivera that he was a narcotics officer; he asked permission to search Rivera and his luggage, but Rivera agreed to a search of his person only and not of his luggage. When asked why he was hesitant to allow his luggage to be searched, Rivera replied that it contained medical equipment and that he would be embarrassed by a search. Agent Stubbs asked if Rivera would rather have a drug sniffing dog check the luggage for narcotics, and Rivera said that he would rather have a dog check the luggage. They proceeded to baggage claim, where the defendant's bag was located.

Agent Webster called for a dog from the Tri-City Narcotics Unit. He also told Rivera he was not under arrest. The K-9 unit arrived less than 15 minutes later, and the agents arranged for the dog, named Simba, to check a line of four bags, including Rivera's luggage. Simba alerted to Rivera's bag. The officers again asked Rivera if he would agree to a search of the bag. Rivera responded that he

would agree only if he could do the search himself, but the officers did not agree to this proposal. Officer Webster then ordered Rivera detained. The officers took him and the bag to the narcotics office, where Agent Torro, who spoke Spanish, informed Rivera of his *Miranda* rights. The officers obtained a search warrant for the bag. Inside, they found five kilos of cocaine.

1. Rivera challenges the denial of his motion to suppress. He contends that Simba's drug "alert" to his bag was insufficient to establish probable cause for the issuance of a search warrant. In reviewing the trial court's ruling on a motion to suppress, we apply the following principles:

> First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support it. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment.

(Citations, punctuation and emphasis omitted.) *Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994).

"[E]vidence that [a] dog has been trained and certified as a drug detection dog constitutes prima facie evidence of its reliability for purposes of a probable cause determination." *Dawson v. State*, 238 Ga. App. 263, 267 (1) (518 SE2d 477) (1999). The State presented evidence that Simba was trained and certified to detect illegal narcotics including methamphetamine, cocaine, marijuana, and heroin. The evidence also shows that at the time Simba alerted to Rivera's bag, he had previously been involved in ten "live" searches and successfully identified narcotics in all ten instances with no false alerts. Rivera presented no evidence challenging the State's evidence of the dog's reliability.

We are not persuaded by Rivera's reliance on two New Mexico federal district court decisions supporting the proposition that the records of a drug dog's reliability are required in order to establish probable cause based on a drug dog's alert. *United States v. Kennedy*, 955 FSupp. 1331 (D. N.M. 1996); *United States v. Florez*, 871 FSupp. 1411 (D. N.M. 1994). We first note that *Kennedy* has been reversed by the Tenth Circuit, *United States v. Kennedy*, 131 F3d 1371 (10th Cir. 1997), and that the holding in that case appears implicitly to over-

rule *Florez* as well.[1] Moreover, "this Court is not bound by decisions of other states or federal courts except the United States Supreme Court." *Rodgers v. First Union Nat. Bank &c.*, 220 Ga. App. 821, 822 (1) (a) (470 SE2d 246) (1996). This is particularly true in the presence of "pertinent Georgia authority." *Sanchez v. State*, 234 Ga. App. 809, 810, n. 1 (508 SE2d 185) (1998). Finally, the defense in *Florez* presented substantial evidence of numerous "false alerts" by the drug dog, and the dog's handler acknowledged that he had failed to keep proper records. No such evidence was presented here.

The existence of probable cause is determined by whether, "given all the circumstances . . . , there is a fair probability that contraband or evidence of a crime will be found in a particular place." (Citations and punctuation omitted.) *State v. Gilman*, 218 Ga. App. 895, 897 (463 SE2d 720) (1995), quoting *Illinois v. Gates*, 462 U. S. 213 (103 SC 2317, 76 LE2d 527) (1983). Considering not only the drug dog's alert but the totality of the circumstances, including Rivera's behavior, demeanor, and responses to the officers' questions, the trial court did not err in denying Rivera's motion to suppress. *Dawson,* supra, 238 Ga. App. at 265.

2. The indictment charged Rivera with knowing possession of over 400 grams of cocaine. See OCGA § 16-13-31 (a) (1) (C). Rivera was in possession of a baggage claim ticket for a bag containing five kilos of cocaine. The bag had an identification card attached to it with the name "Miguel Rivera." After reviewing the evidence in the light most favorable to the verdict, we find that a rational trier of fact could have found proof of Rivera's guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgment affirmed. Johnson, P. J., and Phipps, J., concur.*

DECIDED JANUARY 29, 2001 — ▮▮▮▮▮

*Lee Sexton*, for appellant.

*Robert E. Keller, District Attorney, Staci L. Guest, Assistant District Attorney*, for appellee.

---

[1] "As a general rule, a search warrant based on a narcotics canine alert will be sufficient on its face if the affidavit states that the dog is trained and certified to detect narcotics. [Cits.]" 131 F3d at 1376-1377.