A03A0861. BOSNAK v. THE STATE.
(587 SE2d 814)

ANDREWS, Presiding Judge.

Angela Marie Bosnak appeals from denial of her motion for new trial following her conviction of one count of cruelty to a child, her son R'M, contending that the trial court violated her federal Sixth Amendment right to confrontation by refusing to allow discussion of

a potential sentence a witness could have received but for cooperating.

1. Viewed with all inferences in favor of the jury's verdict, *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), the evidence was that two-month-old R'M was admitted to the emergency room on April 30, 2001. The child presented with sunken eyeballs, delayed capillary refill, increased turgor of the skin, and poor reaction to his environment. Dr. Herrington diagnosed extreme malnourishment and dehydration and administered therapy. R'M had no baby fat and was suffering from muscle wasting. In Dr. Herrington's opinion, if R'M had been of normal birth weight, it would have taken about two weeks to lose this weight. Dr. Herrington also said the child had not been adequately fed within the last six or seven days and there was no indication of vomiting.

A bottle of sugar water was given to R'M, who "actually looked thirsty." After Dr. Herrington watched R'M consume the first bottle, he advised the nurses to continue to give him bottles as long as he would drink. It was one of the worst cases of malnutrition the doctor had ever seen.

Bosnak left for work every day and left R'M with her live-in boyfriend, Harper. He told Bosnak that occasionally R'M would not take food, but Bosnak told him not to worry because either R'M was full or did not want it right then. Harper also saw Bosnak feed R'M Gerber baby food with a spoon, which the doctor said was inappropriate for a two-month-old. Harper noticed when he was bathing R'M that his skin was sagging and told Bosnak to take the child to a doctor. Bosnak, however, refused because she did not want her other two children taken from her.

On April 30, Harper showed R'M to his grandmother, Clark, who had taken care of and successfully fed R'M in the past. According to Clark, R'M would leave her home with a full belly and return skinny. On April 30, because of the child's condition, an ambulance was called. Bosnak became upset because she thought she would be in trouble and left, leaving Harper a note saying she was going to Florida and leaving everything to him.

Dr. Hutchings, R'M's family doctor, testified that R'M had no feeding problems and none had been mentioned to him.

Bosnak contended that she fed R'M the morning of April 30 and he was fine and did not look like he did in the photos taken that day at the emergency room.

The evidence was legally sufficient. *Jackson*, supra; *Straker v. State*, 259 Ga. App. 904 (578 SE2d 568) (2003).

2. Bosnak contends her Sixth Amendment right to confrontation was violated when the State's objection to her cross-examination of Harper was sustained.

The detective who interviewed Harper stated that, although Harper was not in custody, he was advised of his *Miranda* rights, as was the detective's standard procedure. While, initially, Harper said he wanted an attorney, as the detective was getting up to take him out of the interview, Harper changed his mind, signed the form, and was interviewed.

On cross-examination, Harper was asked why he changed his mind and stated

A. I changed my mind because I changed it. That's all. I changed it.
Q. It didn't have anything to do with the fact that the police told you that you were facing between five and twenty years in jail — .
A. No.
Q. — for that charge?
A. No.

The State objected on the ground that Harper had never been charged in connection with R'M and no such potential sentence had been discussed. The trial court ruled that, while there could not be questions about the potential sentence, Harper could be questioned about whether he was charged, whether he thought he was going to be prosecuted, and whether he gave his statement under any coercion. No curative instructions were given to the jury, which was excused during the discussion of the objection, and questioning along the permitted lines continued.

The trial court did not abuse its discretion by so ruling. As stated in *Hodo v. State*, 272 Ga. 272, 275 (4) (528 SE2d 250) (2000), "[t]he mere fact that [Bosnak] was unable to ask [Harper] to conjecture about possible punishment did not diminish [Bosnak's] attempt to show [Harper's] motive for testifying on behalf of the State, and did not amount to an abuse of the trial court's discretion. [Cit.]" See also *Watkins v. State*, 276 Ga. 578, 581 (3) (581 SE2d 23) (2003); *Brown v. State*, 276 Ga. 192, 193 (3) (576 SE2d 870) (2003).

First, as in *Watkins*, there were no pending charges here and this was not a situation where the nature of any pending charges was pertinent to an examination of a witness regarding his understanding of favorable terms contained in any deal, compared to the potential sentence available for the pending charges. Compare *State v. Vogleson*, 275 Ga. 637, 638 (1) (571 SE2d 752) (2002); *Owens v. State*, 251 Ga. 313, 314 (1) (305 SE2d 102) (1983). Nor did the trial court cut off all inquiry into the potential bias of Harper that would have come from any discussion of prosecution of him. Compare *Beam v. State*, 265 Ga. 853, 856 (4) (463 SE2d 347) (1995); *Byrd v. State*, 262 Ga.

426, 427 (2) (420 SE2d 748) (1992). With the exception of inquiry into the specific penalty for child cruelty, cross-examination of Harper was allowed to continue.

The right of cross-examination integral to the Sixth Amendment right of confrontation is not an absolute right that mandates unlimited questioning by the defense. *Hines v. State*, 249 Ga. 257, 260 (2) (290 SE2d 911) (1982) (trial court "may exercise a reasonable judgment in determining when the subject is exhausted") (punctuation omitted); *Watkins v. State*, 264 Ga. 657, 660 (1) (449 SE2d 834) (1994) (no error where "the trial court did not preclude all inquiry on a subject with respect to which appellant was entitled to a reasonable cross-examination. [Cits.]").

Also, as stated above, the jury did hear the potential sentence range and was not directed to disregard it. Therefore, even had there been error, it would have been harmless. See *Lighten v. State*, 259 Ga. App. 280, 285 (4) (576 SE2d 658) (2003).

*Judgment affirmed. Barnes and Adams, JJ., concur.*

DECIDED SEPTEMBER 22, 2003.

*Bernadette C. Crucilla*, for appellant.

*Howard Z. Simms, District Attorney, Nancy S. Moskaly, Myra H. Kline, Assistant District Attorneys*, for appellee.